USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/17/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
ZEREGA AVENUE REALTY CORP. and FRED
TODINO & SONS, INC.,                                        :

          Plaintiffs,                     :     **MEMORANDUM and ORDER**

          -against-                      :     04 Civ. 9651 (KNF)

THE HANOVER INSURANCE COMPANY,                              :
ET AL.,
                                      :

          Defendants.
------------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

       Defendant Hornbeck Offshore Transportation, LLC ("Hornbeck"), in accordance with Rule 104 of the Federal Rules of Evidence, has requested that the Court bar the plaintiffs from offering opinion evidence from Steven I. Schneider ("Schneider"), during the non-jury trial of this action, concerning causation and damages. According to Hornbeck, a report prepared by Schneider and deposition testimony he gave during the pretrial discovery phase of the litigation, contain "opinions that are not based on scientific or engineering principles." In addition, Hornbeck contends that the conclusions reached and expressed by Schneider in his report and through his deposition testimony are unsupported by "documentation, calculations or any evidence." Hornbeck alleges that these deficiencies warrant the Court in finding that the plaintiffs have not satisfied the burden, imposed upon them by Rule 702 of the Federal Rules of Evidence, of establishing that the methodology employed by Schneider in forming his opinions and reaching his conclusions is reliable, and that his testimony will be based on sufficient facts or data.

The plaintiffs oppose the application made by Hornbeck. The plaintiffs maintain that the requirements of Fed. R. Evid. 702 have been satisfied. They contend that Schneider's extensive experience as an engineer assessing damage to marine structures and his particular familiarity with the plaintiffs' marine facility provide appropriate bases upon which the Court may rely in finding that Schneider may present opinion evidence at the trial of this action.

Fed. R. Evid. 702 provides the following:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993), the Supreme Court explained that a federal trial court has a gatekeeping responsibility when opinion evidence is sought to be presented at a trial. The Court must insure that the testimony to be presented is based upon methods and procedures that are reliable; that is, "more than subjective belief or unsupported speculation." Daubert, 509 U.S. at 590, 113 S. Ct. at 2795. In determining whether proffered opinion evidence should be received at a trial, a court must focus on the principles and the methodology employed by the witness who will testify to his or her opinion and not on the conclusions that the principles and the methodology employed generate. See Daubert, 509 U.S. at 595, 113 S. Ct. at 2797.

Schneider is a professional engineer. He received his undergraduate degree in marine engineering from Kings Point United States Merchant Academy in 1964. In 1966, he received a

master's degree in nuclear engineering from New York University. He has garnered 32 credits toward earning a Ph.D. degree.

In the early 1970s, Schneider worked for the Consolidated Edison Company, in New York, as a project engineer. In that capacity, he designed barge unloading and handling facilities constructed of steel and wooden piles. During his tenure with that company, he was also responsible for repairs that were made to the wooden portion of the company's unloading facility.

Later, Schneider worked for General Public Utilities Corporation ("GPU"), a company that is located in New Jersey. Schneider recalled that, while he was employed by GPU, he had limited involvement with marine-based loading and unloading structures. Thereafter, Schneider was employed by a division of the United States Steel Company known as "F&S." At F&S, Schneider rose to the position of vice president of engineering. According to Schneider, F&S fabricated "all sorts of structures from buildings to piers to power plants," although F&S was primarily known in its industry as a leader in fabricating pipe handlers.

In or about 1981, Schneider became a self-employed design professional. He testified, during a deposition, that he designed piers "up and down the coast of New Jersey for different organizations." Schneider has also worked with the Army Corps. of Engineers and the City of New York, designing wooden piers on the Bronx County side of Westchester Bay. Schneider also inspects piers, after storms, for several companies that operate amusement parks along the coast of New Jersey. When Schneider performs "condition surveys" at a pier, he either uses a boat to travel underneath the pier to inspect the pier's cap piles or walks to a position, during low tide, where the cap piles can be observed.

Schneider recalled that he first visited the premises located at 1000 Zerega Avenue, Bronx County, New York, the situs of the marine structure[1] that is the subject of this action, in 2000 or 2001, after the plaintiffs had purchased the property. He made the visit because the plaintiffs had engaged him to facilitate their obtaining a permit to operate a transfer station at that location. Based on the observations Schneider made at that time, he recommended that the plaintiffs make certain repairs to the concrete deck located at 1000 Zerega Avenue because "it was cracked up in some spots." However, during a deposition conducted for this case, Schneider testified that the plaintiffs' deck structure "was basically sound." He testified further that, although he found that the pilings at the plaintiff's marine structure were old, he determined that they were functional and, by probing them with an ice pick, concluded that they were "basically structurally sound."

In 2002, Schneider ceased making efforts to assist the plaintiffs in obtaining a transfer station permit because the state of New York placed a moratorium on issuing permits for new transfer stations. The plaintiffs contend that, in October 2002, a barge being towed by Hornbeck or debris that became affixed to the barge, came into contact with their facility and, thereafter, in November 2002, a portion of the marine structure collapsed.

In 2005, the plaintiffs engaged Schneider to: (a) inspect the facility; (b) render an opinion on the cause of the injury to their premises; and (c) evaluate the economic loss to the plaintiffs as a result of the October 2002 event and the subsequent partial collapse of their property. To assist Schneider, the plaintiffs told him that a barge had struck the marine structure portion of their

---

[1] The plaintiffs' property, that was allegedly injured, is referred to variously in the parties' written submissions as a dock structure, a bulkhead structure, a pier or a relieving platform. For the purpose of this writing, the Court will identify the pertinent property as a "marine structure."

facility. However, no one associated with the plaintiffs actually observed a barge make contact with their facility.

Armed with this information and his recollections of his observations of the facility from in or about 2000 through 2002, Schneider concluded, based on his 2005 survey of the plaintiffs' premises, that there had to have been an "impact" to the plaintiffs' marine structure because it was structurally sound when he had last visited it, and not in such a state of decay that the "kind of collapse" the structure experienced, and that he observed at the facility in 2005, could reasonably be attributed to decay. Moreover, Schneider concluded, based upon his earlier observations of the plaintiffs' premises and his 2005 inspection of the premises, the portion of the facility that no longer existed had not succumbed to natural erosion. Therefore, Schneider accepted the plaintiffs' explanation that a barge had come into contact with their facility causing a portion of it to collapse. In addition, Schneider observed, in 2005, that sheathing that typically would have been on the portion of the marine structure closest to the waterway had been stripped away. As a result, Schneider speculated that debris, which could have become affixed to the barge as it moved through the water, also might have impacted the plaintiffs' property resulting in its partial collapse.

Schneider testified, during a deposition, that the three-year gap between his 2002 visit to the plaintiffs' property, and the year in which the plaintiffs' property was injured, and 2005, when he was hired by the plaintiffs to inspect the marine structure anew, did not affect his ability to analyze the plaintiffs' property. He explained that this was so because, prior to 2005, he had visited the plaintiffs' facility on more than 50 occasions and, based upon those visits, he had a recollection of the observations he made at the facility prior to the October 2002 event through

which the plaintiffs' property was injured. Therefore, Schneider maintained, by drawing upon his recollections of his observations in 2002, and comparing those recalled observations to his 2005 observations of the facility, he was able to assess the injury to the facility and to determine its cause. Accordingly, based upon his earliest observations of the plaintiffs' premises, his 2005 observations of those premises, his prior probes with an ice pick of the piles at the marine structure, his conversation with the plaintiffs, and his experience as a professional engineer, Schneider concluded that the injury the plaintiffs' suffered at their facility was caused either by a barge or by debris attached to a barge coming into contact with the plaintiffs' marine structure.

As noted above, Schneider was unable to support the opinions he formed and the conclusions he reached about the injury the plaintiffs' premises suffered with contemporaneous notes he made of his observations or any other corroborative documentation. According to Hornbeck, the absence of such documentation and Schneider's failure to obtain an eyewitness' account of the October 2002 event that gives rise to this litigation, makes Schneider's opinions and conclusions on the cause of the plaintiffs' loss suspect. Accordingly, Hornbeck argues that the Court should preclude the plaintiffs from offering opinion testimony from Schneider at the trial of this action on the issue of causation.

A court must be secure in the belief that an opinion witness' conclusions and opinions have a reliable foundation or rest on good grounds before authorizing that witness to testify at a trial. See Campbell v. Metropolitan Property & Cas. Ins., 239 F.3d 179, 184-185 (2d Cir. 2001); In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994). In keeping with its gatekeeping responsibilities, the Court has considered the various factors noted in Fed. R. Evid.

702 that should be weighed by a court in determining whether a witness should be permitted to give opinion testimony at a trial.

Based upon an analysis of those factors, and the written submissions made by the parties, the Court finds that, in forming the opinions and reaching the conclusions the plaintiffs want Schneider to impart at the trial, concerning the cause of the injury inflicted upon their premises, Schneider has drawn upon his education as an engineer and his hands-on experience designing and inspecting marine facilities, as well as his pre- and post-injury observations of the plaintiffs' marine structure, which is the subject of the instant action. In addition, the parties' written submissions indicate that Schneider has reviewed and relied upon information generated and exchanged by the parties during the pretrial discovery phase of the litigation including photographs, diagrams and a report prepared by an expert engaged by the defendants. Drawing upon one's educational background and practical experience is a reliable methodology through which to develop opinions and reach conclusions about scientific, technical, or other areas of specialized knowledge. A witness, such as Schneider, who has employed this methodology may be permitted to give opinion evidence at a trial. See McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995).

The fact that Schneider may not have generated or maintained records of his observations of the plaintiffs' facility pre-injury or post-injury, and that his conclusion, that the injury to the plaintiffs' property was occasioned either by the impact of a barge or by the impact made by debris being pulled along by a barge, is informed by facts provided to him by persons who were not eyewitnesses to the injury sustained by the plaintiffs' facility, goes to the weight of the evidence that Schneider will present at the trial and not to its admissibility. See Fed. R. Evid.

703. This is so as long as the facts are of a type reasonably relied upon by engineers who are asked to inspect marine structures that have suffered an injury. Nothing in the record indicates that such engineers gather facts from eyewitnesses solely.

The factors upon which Hornbeck relies heavily in urging the Court to preclude Schneider's opinion testimony do not support its view that Schneider is: (a) unable to draw upon his education, training, experience and technical or other specialized knowledge; or (b) unable to apply those attributes to the facts that have been unearthed during the pretrial discovery phase of the litigation, and have been made known to him, in order to reach certain conclusions and form opinions that would be helpful to the trier of fact in this case. See Lappe v. American Honda Motor Co., Inc., 857 F. Supp. 222, 226-27 (N.D.N.Y. 1994). Therefore, the Court finds, based on the record before it, that Hornbeck has not demonstrated that Schneider failed to apply his knowledge, experience and observations to the facts of this case in a reliable manner. Nor has Hornbeck demonstrated that Schneider will not bring to "the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," see Wills v. Amerada Hess Corp., 379 F.3d 32, 48 (2d Cir. 2004)(quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176 [1999]), if he is permitted to testify on behalf of the plaintiffs on the issue of causation. Accordingly, the Court finds that the plaintiffs may elicit opinion evidence from Schneider at the trial of this action on the issue of causation.

Although the Court is persuaded by the submissions made by the parties that Schneider may testify on the issue of causation, based upon his education, training, experience and pre- and post-injury observations of the plaintiffs' premises, the Court is not persuaded that Schneider's

education, training and experience qualify him to provide opinion testimony at the trial concerning the plaintiffs' damages.

Schneider testified, during a deposition, that he relied upon a treatise, Marshall & Swift Valuation Service Manual ("Marshall & Swift"), in forming an opinion and reaching a conclusion concerning the plaintiffs' economic damages. Specifically, Schneider used Marshall & Swift for calculating cost estimations for replacing the plaintiffs' injured facility. However, Schneider testified that when he used that treatise he was not certain that the methodology set forth in Marshall & Swift was appropriate for use in a circumstance where a marine structure has to be valued. The record before the Court indicates that, before becoming involved with this litigation, Schneider had never applied the valuation methodology adopted by Marshall & Swift to a circumstance involving injury to a marine structure. In fact, Schneider conceded that it was only after he had rendered his report opining on the valuation issue pertinent to this action, and was confronted during a deposition with questions concerning the appropriateness of applying the Marshall & Swift methodology in the context of a marine structure valuation, that he contacted a representative of Marshall & Swift through a computer "chat" and inquired whether the Marshall & Swift methodology could be applied to a marine-based valuation. According to Schneider, he was assured that the methodology could be so applied. However, no record of the computer "chat" exists to corroborate this fact.

In any event, Schneider's ignorance about the propriety of applying the methodology he elected to employ in the context of a marine structure valuation, makes suspect and undermines Schneider's utility as an expert witness on the issue of damages. At a minimum, a witness from whom a party seeks to elicit opinion testimony at a trial must be able to state that his or her

prospective testimony "is the product of reliable principles and methods." Fed. R. Evid. 702. At the time Schneider prepared his report and gave his initial deposition testimony, he was unable to make such a statement because he did not know whether Marshall & Swift's methodology could be applied in the context of a marine structure valuation. Even after being challenged at the deposition on this point, Schneider presented no competent evidence to the Court that corroborates his assertion that the Marshall & Swift valuation methodology is applicable to a case such as this. Furthermore, it is not clear, from the record before the Court, whether Schneider applied the Marshall & Swift principles and methods to the facts of this case correctly and reliably, since the Court is not unmindful of the fact that during a deposition of Schneider, taken in connection with the instant action, some of the computations he made respecting the plaintiffs' economic damages were shown to be in error.

Nothing in Schneider's background and experience demonstrates that he has acquired any specialized knowledge in the area of marine structure valuation that would assist the trier of fact at the trial of this action to understand the evidence on valuation or to determine the amount of economic damages suffered by the plaintiffs as a result of the collapse of a portion of their property. Therefore, the Court finds that, in the instant case, it is not secure in the belief that Schneider's opinions and conclusion on the plaintiffs' economic damages rest on good grounds. Accordingly, the plaintiffs may not elicit opinion evidence from Schneider at the trial of this

action concerning the economic damages they suffered as a result of the loss incurred through the collapse of a portion of their property.

Dated: New York, New York
      May 17, 2006

SO ORDERED:

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE